IN THE DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

CASE NO. 2:11-CV-3142

ECP GP II, INC.                                              PLAINTIFF

VS.                    **MEMORANDUM OPINION**
                            **AND ORDER**

INTERWRAP CORP.                                              DEFENDANT


This matter is before the Court on defendant's motion for summary judgment (Doc. 30). The Court heard oral argument on this motion on March 13, 2013. John J. Pringle, Jr. was present for plaintiff. Cheryl D. Shoun and Chase McNair were present for defendant. Official court reporter Amy Diaz recorded the proceedings.

Having reviewed the matter and heard from the parties, the Court now issues the following memorandum opinion and order. For the reasons that follow, the motion for summary judgment will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

In March 2011, Plaintiff ECP GP II made a public announcement that it was shutting down its Brantford, Ontario plant. *See* Deposition of Hugh Cleveland ("Cleveland Depo.") at 27-28. Shortly thereafter, Harjinder Cheema, Defendant Interwrap's director of capital projects, called Hugh Cleveland,

Plaintiff's Brantford plant manager, to inquire about the sale of Plaintiff's printing presses. *Id.* at 45; *see also* Deposition of Harjinder Cheema ("Cheema Depo.") at 39-40.

Cleveland advised Cheema that, since Plaintiff and Defendant were competitors, he did not think Plaintiff would entertain offers from Defendant. *Id.* at 45. Cleveland testified that Cheema stated in response, "[W]ell, you know, if they – if you don't think they'll sell to us I can always get a – someone else to buy on our behalf." *Id.* at 46. After checking with Plaintiff's corporate officials, Cleveland confirmed with Cheema that Plaintiff would not sell to Defendant. *Id.*

Soon thereafter, Plaintiff began negotiations with an equipment broker in India, Aman Poly Pack Ltd. ("Aman"), regarding a few of Plaintiff's printing presses. *Id.* at 42. On April 25, 2011, Plaintiff entered into an Equipment Purchase Agreement with Aman for three printing presses: a C&H Printing Press, a Robinette Printing Press, and a W&H Printing Press. *Id.* at 118; *see also* Doc. 33-3. The C&H and Robinette Presses are wide presses and the W&H Press is a narrow press. The total price for the three presses was $750,000, to be paid as follows: $150,000 at the execution of the agreement, $300,000 at the beginning of the dismantling of the presses, and $300,000 upon completion of the dismantling. *See* Doc. 33-3.

2

While these negotiations were taking place, Defendant was contacted by Anil Kaushik, a principal partner of Aman, regarding Defendant's interest in purchasing printing presses. *See* Cheema Depo. at 47. The negotiations between Defendant and Aman were very brief, and Aman was very reluctant to provide details about the presses that were available. *Id*. at 49.

Cheema testified that Aman's reservation of specific details was typical within the industry as brokers are often fearful that a potential buyer will go directly to the seller, circumventing the broker's commission. *Id*. at 109. However, Aman did disclose to Defendant that wide presses, the only type of press Defendant coveted, were available. *Id*. at 49.

On April 28, 2011, Defendant entered into a purchase agreement with Aman for the sale of a C&H Printing Press and a Robinette Printing Press. *See* Doc. 30-3. The purchase agreement called for payment of $275,000 for the C&H Press and $200,000 for the Robinette Press. *Id*. Defendant wired $160,000 on the date of the purchase agreement, and the remaining $315,000 on May 20, 2011. *See* Doc. 30-4, 30-5. Cheema testified that purchasing equipment of this nature without inspection is a common practice, and, in fact, the price Defendant paid Aman for these presses represented a "sight-unseen" value for the equipment. *See* Cheema Depo. at 94, 97.

On approximately June 1, 2011, Aman sent Paul Teveliet to Plaintiff's plant to oversee the dismantling of the presses. *See* Cleveland Depo. at 74-75, 80. Cleveland testified that Cheema, Defendant's employee, arrived at the Brantford plant while the presses were being dismantled and advised that he was there to assist in supervising the dismantling. *Id*. at 46. Cleveland asserts that when he confronted Cheema, Cheema insisted that he did not work for Defendant. *Id*. at 47.

Cleveland testified that Aman dismantled the C&H and Robinette presses quickly, but left the W&H press at the Brantford plant. *Id*. at 77. Aman paid Plaintiff the first two installments, but never made the remaining $300,000 payment. Plaintiff asserts that it made repeated attempts at correspondence, but Aman did not respond. *Id*. at 78.

Eventually, Plaintiff destroyed the W&H Press. *Id*. Aman asserts that it had a verbal agreement to sell the W&H Press to an Asian company, but the Asian company was unable to secure financing. *See* Affidavit of Anil Kaushik at ¶¶ 6, 7. Aman asserts that, despite its request for Plaintiff to extend time for payment, Plaintiff destroyed the W&H Press. *Id*.

It is undisputed that Plaintiff never received payment for the third installment of its purchase agreement with Aman. However, it is also undisputed that Defendant paid Aman in full. Additionally, it is undisputed that the C&H and Robinette

4

presses now located at Defendant's Charleston facility are the same presses which were the subject of the Plaintiff-Aman purchase agreement.

Plaintiff asserts that, at all times relevant to this litigation, Aman was acting as Defendant's agent to evaluate the two printing presses for Defendant's ultimate purchase. *See* Complaint at ¶ 11; *see also* Doc. 33 at p. 6. Both Defendant and Aman deny this allegation. *See* Cheema Depo. at 115; *see also* Kaushik Affidavit at ¶ 8.

Plaintiff filed suit against Defendant on October 10, 2011 asserting claims of breach of contract, breach of contract accompanied by a fraudulent act, claim & delivery, intentional conversion, innocent conversion, and unjust enrichment. *See* Complaint.

## ANALYSIS

### A. Undisclosed Principal.

Defendant correctly asserts that for Plaintiff's breach of contract and breach of contract accompanied by a fraudulent act claims to be viable, it is necessary that Plaintiff establish an agency relationship between Defendant and Aman and demonstrate that Defendant directed Aman in the Plaintiff-Aman purchase agreement. *See* Doc. 30-1 at 6. Thus, the viability of these claims turns on this agency issue. More specifically, Plaintiff

must be able to establish that Defendant was the undisclosed principal of Aman.

Agency is the fiduciary relationship that results when two persons consent that one will act on behalf of and under the control of the other. 23 S.C. Jur. *Agency* § 2 (2012). "The rule that a principal is liable for the acts of an agent within the scope of the agent's authority applies to an undisclosed as well as to a disclosed principal, and the fact that an agent acts in his or her own name without disclosing the principal does not preclude liability of the principal when discovered to be such by the third party." 3 Am. Jur. 2d *Agency* § 308 (2012) (citation omitted). However, without proof of an actual agency relationship, Plaintiff cannot rely upon the doctrine imposing liability on an undisclosed principal. *Id*. (citation omitted).

Also, "[a] party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." *Frasier v. Palmetto Homes of Florence, Inc.*, 473 S.E.2d 865, 867 (S.C. Ct. App. 1996).

In support of its motion, Defendant directs the Court's attention to the affidavit of Anil Kaushik, the principal partner of Aman, and the deposition of Harjinder Cheema, Defendant's employee who negotiated the agreement between Defendant and Aman. *See* Doc. 30-1 at pp. 6-7. Specifically, both Cheema and Kaushik testified that they acted independently

and there was no agency relationship between Defendant and Aman regarding the Plaintiff-Aman purchase agreement. *See* Cheema Depo. at 115; Kaushik Affidavit at ¶¶ 3, 5, 8.

Plaintiff's assertion that Defendant was Aman's undisclosed principal relies heavily on two pieces of evidence: Cheema's alleged statement to Cleveland and Cheema's presence during the dismantling of the presses. *See* Cleveland Depo. at 48. In fact, Plaintiff's representative admitted in his deposition that Plaintiff has no tangible evidence that Defendant had any control over Aman. *Id*. at 48-49. Additionally, Plaintiff's representative admitted that, other than what was described above, it has no evidence that Defendant directed Aman in the Plaintiff-Aman purchase agreement. *Id*. at 49-50.

Despite Plaintiff's belief, Cheema's presence does not create a genuine issue of material fact. Rather, Cheema's presence is easily explained by the fact that Defendant had already entered into a purchase agreement with Aman for the presses in question. *See* Doc. 30-3. In fact, the purchase agreement between Defendant and Aman states that the removal and transportation cost was Defendant's responsibility. *Id*. Thus, Cheema's presence does not suggest an agency relationship between Defendant and Aman, but, rather, indicates Defendant's obligation as negotiated by an arms-length deal with Aman.

7

In its responsive memorandum, Plaintiff also asserts that "the facts demonstrate that Aman Poly Pack conducted due diligence on Interwrap's behalf." *See* Doc. 33 at p. 7. On this point, Plaintiff points to Kaushik's affidavit where he states that he "hired Paul Teveliet . . . to assess the condition of all . . . the . . . presses and opine as to the feasibility and expense regarding their dismantling and transport." *Id*. (citing Kaushik Affidavit at ¶ 3).

While Plaintiff asserts that this is evidence of an agency relationship, there is no indication that Aman hired Teveliet at Defendant's direction. Rather, Aman's inspection of the presses is consistent with its position as a broker. The mere fact that a broker inspects a product which it intends to resell does not constitute competent evidence of an agency relationship with its prospective purchaser.

Without other evidence to rebut the testimony of Cheema and Kaushik, no reasonable jury could find that Defendant was the undisclosed principal of Aman regarding Aman's agreement with Plaintiff. *See W.K. Niver Coal Co. v. Piedmont & Georges Creek Coal Co*., 136 F. 179, 180 (4th Cir. 1905) (holding that a judgment as a matter of law in favor of defendant was proper where the record did not support an agency relationship and both parties to the alleged agency denied such relationship).

For an agency relationship, the parties must intend that the agent act on behalf of the principal. *See* 23 S.C. Jur. *Agency* § 2 (2012). A party acting on its own behalf is not an agent. *Id*. Plaintiff has failed to provide evidence from which a jury could reasonably infer that Defendant and Aman had agreed that Aman would negotiate and enter into an agreement with Plaintiff on Defendant's behalf. Rather, the evidence establishes that Aman acted on its own behalf as an independent broker of the presses in question.

Accordingly, Defendant, as a matter of law, cannot be held liable for Aman's breach of the Plaintiff-Aman purchase agreement.

**B. Innocent Purchaser for Value.**

Next, Defendant asserts that Plaintiff's claims for claim & delivery, intentional conversion, innocent conversion, and unjust enrichment must fail, as a matter of law, because Defendant was an innocent purchaser for value of the printing presses. *See* Doc. 30-1 at 7.

In order to claim protection as an innocent purchaser for value, Defendant must establish "(1) [t]hat the purchase money was actually paid before notice of outstanding incumbrances or equities . . . ; (2) that [it] has purchased and acquired the legal title, or the best right to it, before notice of outstanding incumbrances or equities; and (3) that [it]

purchased bona fide without notice." *S. C. Tax Comm'n v. Belk*, 225 S.E.2d 177, 179 (S.C. 1976).

In accordance with the above analysis, Plaintiff's claims for claim & delivery, intentional conversion, innocent conversion, and unjust enrichment must fail as there is no evidence that Defendant was aware of Plaintiff's interest in the presses prior to Defendant's payment to Aman for the presses. In fact, Defendant wired its final payment to Aman on May 20, 2011, (*see* Doc. 30-5), which was prior to Aman beginning the dismantling of the presses. *See* Cleveland Depo. at 80 (stating that the dismantling began on or about June 1, 2011). Thus, Cheema's presence at Plaintiff's plant occurred after Defendant had already finalized its payment to Aman.

Accordingly, Defendant cannot be held liable because, as a matter of law, it was an innocent purchaser for value of the presses in question.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. 30) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 26th day of March, 2013.



11